Our third case for this morning is United States v. Elmer Wiman. Mr. Brinson. May it please the court. Thank you very much. My name is John Brinson, representing I think his name is Wiman. He was convicted by a jury of robbery of a credit union, felon in possession of a firearm, and carrying a firearm in relation to a crime of violence. He was sentenced to trial. The trial court forgot to swear in the prospective jurors, forgot to tell them to tell the truth before they were questioned on voir dire, until the voir dire process was virtually complete. At that time, he discovered his mistake and swore the jurors in, swore them to true answers make to such questions as may be asked touching the qualifications of jurors. Now, there's no indication that I saw, but please correct me if I'm wrong, that anyone had a particular complaint about the fairness of the jury that actually sat in this case. Well, we asked them the questions, or the judge asked them the questions concerning their willingness to follow the court's instructions and whether they had any inherent prejudices against guns and so forth or bank robbery. So no. Right. I mean, the reason I asked the question is that there's a different line of cases dealing with mistaken decisions to deny a challenge for cause that then prompts the defendant to use a peremptory challenge. And the Supreme Court has said that's just what they're for. And if the jury that ultimately sat was a fair jury, that's what the law, that's what the Constitution entitles you to. And I'm reminded of that line of cases by what happened here. Because, you know, the judge is very clear. He says, you know, oops, I made a mistake. The oath should have been given before we started. And so he takes measures to fix it. This isn't something that's left alone. He asks the group first whether anybody would have changed any answer, and they all sort of sit there, I guess. But then he asks individually, and they all say, you know, I reaffirm, you know, whatever it is I said, more or less. And with that background and the notion that if there's, there's no reason that the jury that actually sat should be criticized, I'm not sure where this argument is going. Let's look at the function of the oath of perspective jurors to answer questions truthfully. I'm going to quote a case cited by the government, Turrietta. The gravity of jury duty is first impressed upon the jurors prior to board your examination. When the veneer swears to answer questions truthfully, these affirmations provide certain assurances to the parties. But, you know, yes, that's true. But the judge does say, as this process, it's actually not the best, you know, translation from the French, but what he does say is we begin today's proceeding with the process known as voir dire. That comes from a Latin term, which means to tell the truth. And he's telling them, you know, I'm going to ask you these questions. We're going to have you tell the truth. It actually means to see, to say, but never mind. So, imperfect, but still, it seems strange to think that anybody sitting in that veneer thought, oh, you know, this is just some casual thing that I can make up as I go along. Jury affirmations assure the court that they will answer the questions honestly and abide by the instructions. And he does that midway through the process and at the end, before the jury is sworn, before the ultimate jury is sworn, right? There have been, the government says this is not error, as I think you were saying, because it's not embodied in any rule, constitution, or law. We have no evidence that the jury lied. Well, there's a slight difference between error and failure to follow best practices. I mean, I'm not going to sit here and say we shouldn't swear veneers and shouldn't swear juries, because I don't think that, but it's an imperfect institution, as we were discussing earlier in a different context. And there's a slip up that the court, so the question really is, did the court fix it adequately? I don't think they did. I don't think they can. I think for them, after we go through this entire process, inadvertently questioning them and listening to them when they were not under oath, the judge then goes back and tries to fix it retroactively. Are they actually, that's not the same thing as if they were sworn beforehand. You certainly can't expect the jurors to say, well, yeah, as a matter of fact, now that I'm under oath, it's different. You can't expect them to do that. But you don't have any evidence that anybody did. I mean, sometimes we have cases, I'm reminded suddenly of the George Ryan case, where a juror misrepresents. A juror says, I've never been involved with the criminal justice system, and lo and behold, they have been. I guess it just depends on what value you think the oath has. If you think it has... And that juror was sworn, so... Where does the requirement of an oath come from? It is, as the government says, standard practice. So there is no requirement. Well, I would say... It's just something judges traditionally do. It's certainly not in Criminal Rule 24, which is the rule about jury selection. There have been hundreds of thousands, if not millions, of jury trials. I'm sure there have been. And they've all been sworn. But it does seem to me strange to say that there is... You can't even apply harmless error analysis to something that, so far as the rules are concerned, wasn't an error to begin with. I think it is an error. I think it is structural error. Where does... What makes it an error? It's not in Rule 24. Has the Supreme Court ever said that jurors must be under oath? They've never said not. No, they've never said that. Have we ever said that? I think if you do, Your Honor, you'll... Have we ever said that? No, no judge has ever said one way or the other. This is a case of first impression. And I think if you set a precedent... Let's hope it's a case of last impression, too. I think if you... Well, look, to make your argument the best way you can make it, you would have to say that there was some federal common law procedural rule that requires this, even though it's not in terms in the Constitution and any statute that I know of in the rules or in a judicial opinion. It's axiomatic. All I can say, Your Honor, is axiomatic. It's so basic and ingrained in our system that you don't need to talk about it. Okay. I think if you rule that there is no right to have a jury sworn before voir dire, what's the next step? Is it to say, well, you don't really need to swear in witnesses either. They're probably going to tell the truth, too. They understand how important it is. The oath has a value in and of itself. Well, but let me distinguish between two things, and then I'm going to see if you want rebuttal time. One of them is simply to say to the person, you know, this is a solemn proceeding. We expect you to tell the truth, and that's, you know, if you lie to us, there are potential perjury consequences. Only if you're in a row. But the judge has told them that they need to tell the truth here. It makes it much less of a solemn occasion if there is no oath, if they're going to stand as a group and swear to tell the truth. You may be right. You may be right. Your Honor, this new case that the government cited, Webster v. Massachusetts, a very important case. It's a 2017 case dealing with structural error in a different context, but it's still structural error. The court said, neither the reasoning nor the holding here calls into question the court's precedence determining that certain errors are deemed structural and require reversal because they cause fundamental unfairness, either to the defendant in the specific case, and here your Honor is correct, I can't show any particular error, or by the pervasive undermining of the systemic requirements of a fair and open judicial process. The court cited a Harvard Law Review article that said eclectic normative objectives of criminal procedure go beyond protecting a defendant and include ensuring the administration of justice, that the administration of justice should reasonably appear to be disinterested. Okay. Thank you very much, Mr. Brinson. I'm going to give you just... I think the appearance is very important. Okay. I think if you say that we don't need an oath, then the jury system is devalued. All right. Fine. Thank you. Thank you very much. Mr. Reitz. May it please the court, Brian Reitz for the United States. I would just echo what the court has said, that this was a failure to follow the best practices, but there's been no complaint that the specific jury that was seated was unbiased or was impartial in any way. The jury that was seated was constitutional. We would all... Did you just say what I thought you did? Yes. I think you just said there's no contention that the jury was impartial in any way. Yes. I apologize, Your Honor. That was definitely... Tied up with... I was worried if that were... I would like to walk that back, Your Honor. There is no allegation that the jury that was seated was not impartial. You want to say had a problem. Had a problem. Yes. There was no problem with the jury. If there was, the court adequately addressed any potential error. It took remedial steps in questioning the veneer individually and collectively. It swore in the pettit jury before it started. Can you reassure us, Mr. Reitz, that the government is not going to take this case as a green light to stop swearing veneers and juries? No, Your Honor. It's certainly not our intent to not swear in the veneer or the pettit jury. We didn't notice it. If we would have, we would have requested it right away. We recommended that the court question the jurors individually about this as well, so we agree that this was not the best practice, but we don't think it rises to any sort of constitutional or legal error. So Mr. Brinson's point that there is a certain solemnity about taking an oath is a good one. Yes, we do not dispute that. We think that sufficiently occurred here, both for the veneer and the pettit, but we agree that it should occur at the very beginning. We have no dispute with that whatsoever. But I think the remedial measures the court took remedied any potential error, and the jury that was seated was impartial. It was constitutional, and to whatever extent it matters, the overwhelming evidence should cut against any prejudice that could have occurred here as well. Now, did Judge McKinney indicate that this glitch occurred because there was somebody new in the courtroom? I was trying to figure out what made this happen to begin with. As far as I understand, it was just an oversight, Your Honor. Whoever this person, Jordan, is. I don't know. I think it was just something that was forgotten at the very beginning, and the judge took the proper good enough steps as he could have to remedy it at that point in time. Would you draw a distinction between failing to swear the veneer and failing to swear the pettit jury that's actually selected? Courts have generally drawn that distinction. I don't know if we could go far enough to say it necessarily would be structural, but certainly courts have drawn a distinction between the two and have maybe looked closer when the pettit jury is not sworn or it's belatedly sworn. But there has really been certainly no federal case where a belatedly sworn veneer is any sort of error that cannot be remedied. But certainly we would agree that errors in swearing of the pettit jury would be a little more problematic, if not inherently reversible. Well, jeopardy attaches and other things happen, yes. Right. Okay. All right. Thank you. All right. Thank you very much. I will give you a minute, Mr. Brinson. I think you have about 30 seconds, actually. This distinction between the swearing of the jury after they've been selected and the swearing of the jury to answer questions during a voir dire is critical. And there has never been a case, and there has been no case cited, which deals with failure to swear the jury and to answer the questions on voir dire. It might mean nobody raised the issue. Well, they've always been sworn, Your Honor. They've always been sworn. That failure implicates the defendant's ability to select a jury, which is different than the deliberations problem. All the cases cited by both sides deal with failure to swear during or before deliberations begin. It's a different thing. As far as Jordan, I think Jordan was the clerk. He was the new clerk. I don't think Judge McKinney was trying to blame it on Jordan. Seriously, obviously, Judge McKinney said he was going to do the voir dire, and obviously it's his decision today. Okay. So your time is up, Mr. Brinson. Thank you very much. And thank you also for taking the appointment in this case. We appreciate it. Thank you. We'll take the case under advisement.